IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


AARON R. ALGER,

        Petitioner,

    v.                                     No. 11-3144-SAC

DEREK SCHMIDT,
KANSAS ATTORNEY GENERAL,

        Respondent.


MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254 by an inmate at Lansing Correctional Facility who was convicted of first degree murder in the death of his girlfriend's two–year–old daughter. The parties do not dispute the procedural history of the case or the facts as set forth in Respondents' brief. Dk. 7. Accordingly, the Court adopts those facts as correct and finds it unnecessary to set them forth herein except as necessary to the analysis of the Petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz,* 392 F.3d 1166, 1175 (10th Cir. 2004).

**I**. **AEDPA Standard**

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766,

130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone,* 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams,* at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme

Court precedent where it should apply. *House v. Hatch,* 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## II. Issues

Petitioner alleges multiple constitutional errors during his criminal trial. The Court first addresses Petitioner's claim that he was denied his right to effective assistance of trial counsel.

### A. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel, Mr. Bernhart, was ineffective in the following respects: (1) failing to object to the admission of videotaped statements to police; (2) failing to argue that the victim's death might have

been caused by actions of emergency medical technicians; (3) failing to call Dr. Kathy Newell to provide expert testimony that the victim's injuries did not cause instantaneous death; (4) failing to file a motion to suppress Petitioner's involuntary statements to police; (5) failing to call Dr. Kathy Newell to provide expert testimony that shaking was not the cause of the victim's death; and (6) failing to pursue testimony regarding a dog allegedly knocking Alexis down.

### 1. State Court Holding

Petitioner did not present the second or sixth of these claims, which suggest other causes of the victim's injuries, to the Kansas appellate courts, either in his direct appeal or in his collateral appeal. Therefore, Petitioner may not raise these issues on habeas review, as they are procedurally defaulted. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999) (holding failure to give state courts one full opportunity to resolve constitutional issues by presenting claims in state appellate review process results in default).

Petitioner's other claims of ineffective assistance of counsel were raised before the Kansas Court of Appeals (KCOA) in his appeal from the denial of his K.S.A. 60-1507 motion.

The KCOA applied the following test:

> To support a claim of ineffective assistance of counsel, a defendant must demonstrate (1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

4

adversarial process that the trial cannot be relied on as having produced a just result. [Citations omitted.]" *Bledsoe v. State,* 283 Kan. 81, 90, 150 P.3d 868 (2007).

*Alger v. State*, 247 P.3d 234, at 3 (2011).

At trial, defense counsel called Dr. Richard Gilmartin as an expert to cast doubt on the State's theory that Alexis was killed as a result of Petitioner abusing her, by challenging the timing of the victim's injury. Before trial, defense counsel had consulted Dr. Newell, pursuant to Dr. Gilmartin's suggestion, but decided not to call her at trial because she could not determine a precise time of the injury that would rule out Petitioner as the perpetrator.

Regarding Petitioner's claim that his attorney was ineffective for failing to call Dr. Newell as a witness, the KCOA concluded:

> Newell's proposed testimony would have prejudiced Alger's defense in that her testimony would have supported the State's allegation that Alexis' injury occurred on August 29 while Alexis was under Alger's care. [Petitioner's attorney's] testimony at the evidentiary hearing indicates this was the precise reason he did not call Newell as a witness. He testified he decided not to call Newell because she could not date the point of injury at a time when Alexis was not in Alger's care. It would have been poor trial strategy for [the attorney] to call a witness who would do nothing more than further substantiate the testimony of the State's experts that Alexis' fatal injury occurred on August 29 while she was in Alger's care. Clearly, [the attorney's] decision to refrain from calling Newell as a witness was strategic and did not fall below an objective standard of reasonableness.
>
> Because Bernhart's performance was not deficient for failing to call Newell as a witness, we need not address the second step of the ineffective assistance of counsel analysis. See *Lumley v. State,* 29 Kan.App.2d 911, 914, 34 P.3d 467 (2001), *rev. denied* 273 Kan. 1036 (2002).

*Alger*, 247 P.3d 234 at 5-6.

The KCOA then addressed Petitioner's claim that his attorney's failure to object to the admission of the videotape of Alger's third interview constituted ineffective assistance of counsel. Although neither the videotape nor a transcript of the interview was included in the record on appeal, the KCOA noted the Kansas Supreme Court's statement that during the interrogation "the detective ... expresses doubt about [Alger's] evasiveness and repeatedly says that he is not being truthful." 2011 WL 767886 at p. 6, citing 282 Kan. at 301–02.

> Barnhart testified at the evidentiary hearing that allowing the jury to see the interview was a strategic decision … It is apparent that Bernhart wanted the jury to see that law enforcement repeatedly tried to get Alger to confess to shaking Alexis on August 29 by utilizing unfair tactics but that Alger never confessed.

> According to Bernhart's testimony, it was part of the defense's strategy for the jury to see that Alger maintained to law enforcement, even throughout a tough interrogation, that he did not shake or injure Alexis on August 29. Moreover, the videotape provided support for the defense's argument regarding law enforcement's conduct in trying to get Alger to confess. This strategy is similar to that recognized by the court in *Anthony.*

*Id.*, at p. 7. The KCOA concluded:

> Bernhart's failure to object to the videotape was a result of reasonable trial strategy and, therefore, Bernhart's representation in this regard was not inadequate. See *Gleason,* 277 Kan. at 644. As a result, it is unnecessary to address the second step of the ineffective assistance of counsel analysis. See *Lumley,* 29 Kan.App.2d at 914.

*Id.*, at p. 7.

## 2. Habeas Review

The Court reviews Petitioner's claims of ineffective assistance of counsel under the familiar framework laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, to prevail on a claim of ineffective assistance of counsel, Petitioner must show both that his counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687–88; *accord Hooks v. Workman,* 606 F.3d 715, 723 (10th Cir. 2010).

This court's review of counsel's performance is "highly deferential." *Hooks,* 606 F.3d at 723. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation omitted). "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Hooks,* 606 F.3d at 723 (citations omitted) (internal quotation marks omitted); *accord Gardner v. Galetka,* 568 F.3d 862, 874 (10th Cir. 2009), *cert. denied,* 559 U.S. 993 (2010). "The Supreme Court requires [the court] to make 'every effort ... to eliminate the distorting effects of hindsight' by indulging in a strong presumption counsel acted reasonably." *Strickland,* 466

U.S. at 689. Petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy. *Byrd*, 645 F.3d at 1168.

Furthermore, because this is a § 2254 proceeding, the Petitioner faces an even greater challenge, as this court defers not only to the attorney's decision in how to best represent a client, but also to the state court's determination that counsel's performance was not deficient. *Byrd*, 654 F.3d at 1168. For that reason, this court's review of a defendant's habeas claim of ineffective assistance of counsel is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009).

In denying Petitioner's claims, the KCOA evaluated the evidence of record and applied a rule consistent with the United State Supreme Court's *Strickland* standard for ineffective counsel. *See* 466 U.S. at 687. The KCOA's finding that counsel intentionally chose not to challenge admission of the videotape and not to call Dr. Newell as a witness as part of a reasonable trial strategy, was a reasonable finding.

Counsel's strategy in admitting the videotape of the unredacted interview was for the jury to see the harsh techniques used by the officers during the interview, and to see that despite those techniques, Petitioner never admitted to the charged crimes. Trans. 60-1507 hearing, p. 6-9.

Petitioner requested that the tape recorder be turned off and was not aware that his third interview was videotaped. But recording Petitioner's statements, whether by tape recording or by videotaping, is only a manner

8

of accurately preserving Petitioner's statements. Petitioner was forthcoming in his interview and has not shown that he unequivocally invoked his *Miranda* right to remain silent. Nor has Petitioner shown that he falls within the rule established in *Connecticut v. Barrett*, 479 U.S. (1987) (finding a defendant's refusal to make written statements without presence of his attorney did not prohibit all further discussion with police, where defendant agreed to make an oral statement). Counsel reasonably believed that the Petitioner's statements had been made voluntarily, although he hoped the jury would view the officers' questioning as unfair. Trans. 60-1507, pp. 8-12.

The videotape shows that officers repeatedly accused Petitioner of not telling the truth during the interview. But it also shows that Petitioner denied each such accusation and insisted that he *was* telling the truth. Petitioner's credibility was an important issue in this case.  But nothing in the content of the conversation included in the record before the state court[1] would cause the jury to surrender its own common sense in weighing the testimony. The officers were not alleged to be expert witnesses on Petitioner's credibility, and their accusations appear to be techniques commonly used in law enforcement.

Further, "an indigent defendant has no constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if

---

[1] On habeas review, this Court must limit its inquiry "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011).

counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Nothing in the evidence of record shows that the admission of the videotape denied Petitioner due process, or that counsel's decision to permit its admission was anything other than reasonable trial strategy at the time.

Petitioner contends his confession was compelled, but he admits he waived his *Miranda* rights. Dk. 16, p. 10. Petitioner contends that the detectives who interviewed him elicited involuntary incriminating statements from him (that he had shaken the victim on dates other than the date he called 911) by misrepresenting the seriousness of the victim's physical condition, by downplaying the severity of his potential criminal liability, and by encouraging him to speculate about how the victim's injuries could have occurred. But the totality of the facts fails to show that Petitioner's will was overborne by anything the officers did during the interview. Failing to file a suppression motion seeking to exclude the videotape would have been futile, given Petitioner's admitted waiver of his *Miranda* rights and the lack of any other arguable basis for suppression. A lawyer's performance isn't deficient because he decides not to file a motion that is doomed to fail. *United States v. Hood*, 501 Fed.Appx. 812, 813, 2012 WL 5507189, 1 (10th Cir. 2012). The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles,* 556 U.S. at 123-124.

Counsel's reasons for not calling Dr. Newell as an expert witness were also strategic, rather than negligent. Counsel reasonably believed that calling Dr. Newell as a witness would hurt Petitioner's case. Because Dr. Newell could not date the point of injury to a time when the victim was not in Petitioner's care, counsel could not have assisted Petitioner's case by calling Dr. Newell. Instead, her testimony would have underscored the testimony of the State's experts that the victim's fatal injury could have occurred while the victim was in Petitioner's care.

Counsel reasonably viewed the key to the defense as Dr. Gilmartin, who testified that the injury that killed the victim did *not* occur between the time the mother went to work and the time the 911 call was made, when the victim was in Petitioner's exclusive care. Dr. Gilmartin also testified that the fatal injury could have occurred days or maybe a week before the victim's injuries became observable, opening up the possibility that someone other than the Petitioner could have inflicted the fatal injuries. Dr. Newell's testimony would not have ruled out the time immediately before the 911 call, as Dr. Gilmartin's testimony did.

That Dr. Newell's testimony could have corroborated Dr. Gilmartin's testimony (that the injury could have been inflicted days before the 911 call) is insufficient to demonstrate prejudice. *Bradford v. Williams*, 479 Fed. Appx. 832, *2 (10th Cir. 2012). Petitioner "must show more than that his counsel's action had some conceivable effect on the outcome of the proceeding,

because virtually every act or omission of counsel would meet that test."
*Turrentine v. Mullin,* 390 F.3d 1181, 1205 (10th Cir. 2004) (citations, quotations, and alterations omitted). Here, counsel weighed the benefit of Dr. Newell's corroboration against the detriment of her inability to rule out the Petitioner as the perpetrator, and reasonably decided not to call her. Accordingly, the KCOA reasonably found that Petitioner was not deprived of his right to effective assistance of trial counsel.

### B. Admission of Unredacted Video

Petitioner claims that his right to a fair trial was violated by the trial court's admission of the unredacted video of his interview with police, in which an officer repeatedly accused him of lying.

#### 1. State Court Holding

The Kansas Supreme Court declined to address the merits of this issue because the Petitioner had failed to make a contemporaneous objection at trial, as was necessary to preserve the issue for appellate review. *State v. Alger,* 282 Kan. at 303.

#### 2. Habeas Review

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin,* __ U.S.__, 131 S.Ct. 1120, 1127 (2011) (internal quotation marks and citations omitted).

> To be independent, the procedural ground must be based solely on state law. *English v. Cody,* 146 F.3d 1257, 1259 (10th Cir.1998). To be adequate, the procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims." *Sherrill v. Hargett,* 184 F.3d 1172, 1174 (10th Cir. 1999).

*Thacker v. Workman,* 678 F.3d 820, 835 (10th Cir. 2012), *cert. denied, __ U.S. __,* 133 S.Ct. 878, 184 L.Ed.2d 688 (2013).

The contemporaneous objection rule is a firmly established and regularly followed state practice. *See State v. Levy*, 292 Kan. 379, 386-88, 253 P.3d 341, 346-47 (2011); *see also Torres v. Roberts*, 2007 WL 1662645 at *8 (D.Kan. 2007) (unpublished opinion). The Kansas Supreme Court has recently "accentuated the procedural bar established by K.S.A. 60–404, which prevents appellate review of evidentiary issues unless there was a timely and specific objection at trial." *State v. Dukes,* 290 Kan. 485, 487–88, 231 P.3d 558 (2010) (noting "[i]n recent years ... we have consistently been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right."). The decision of the Kansas Supreme Court thus rests on an independent and adequate state ground.

To obtain habeas review of this issue, Petitioner bears the burden to show cause and prejudice or a fundamental miscarriage of justice.

> If a particular claim was defaulted in state court on an independent and adequate state procedural ground, we recognize the state courts' procedural bar ruling and do not address the claim on the merits unless cause and prejudice or a fundamental miscarriage of justice is shown.

*Thacker,* 678 F.3d at 835 (internal quotation marks and citations omitted). See *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-2554, 115 L.Ed.2d 640 (1991). Cause may be shown by either actual ineffective assistance of counsel or some objective factor external to the defense that impeded efforts to comply with state procedures. *Coleman,* 501 U .S. at 725; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Petitioner alleges that ineffective assistance of counsel can constitute the required cause, and indeed it may. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). But as discussed above, Petitioner has not demonstrated actual ineffective assistance of counsel. Accordingly, Petitioner has failed to show the cause and prejudice necessary to overcome this procedural default.

The fundamental miscarriage of justice exception allows a defendant to obtain review of his defaulted claims by showing actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339–40, 1 12 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To establish actual innocence, Petitioner must demonstrate that, "'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Id.* (citations omitted). This is a burden Petitioner has not attempted to meet and does not meet. Accordingly, this claim of error is procedurally barred from habeas review.

### C. Coerced Confession

Petitioner additionally claims that the detectives who interviewed him elicited involuntary incriminating statements from him (that he had shaken the victim before) by misrepresenting the seriousness of the victim's physical condition, by downplaying the severity of his potential criminal liability, and by encouraging him to speculate about how the victim's injuries could have occurred. Petitioner asserts that these techniques were coercive and rendered his statements inadmissible under the Fifth and Fourteenth Amendments to the United States Constitution.

### 1. State Court Holding

The Kansas Supreme Court declined to address the merits of this issue. Ruling that this constitutional ground was asserted for the first time on appeal so was not properly before it for review, the Court stated:

> As with the unredacted videotape, no motion to suppress was filed in the district court and no objection lodged to the admission of the statements at trial. Generally, when constitutional grounds are asserted for the first time on appeal, they are not properly before this court for review. *Williams,* 275 Kan. at 288, 64 P.3d 353. Although we have at times employed one or more of three exceptions to this rule— (1) The newly asserted claim involves only a question of law arising on proved or undisputed facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason, *State v. Schroeder,* 279 Kan. 104, Syl. ¶ 9, 105 P.3d 1237 (2005)—we are not required to do so. In this case, where defense counsel never even attempted to have the statements excluded by means of a motion to suppress, we decline to reach the merits of this claim.

*State v. Alger*, 282 Kan. 297, 304 (2006).

### 2. Habeas Review

The Kansas Supreme Court's reason for not addressing the merits of this claim was based on an independent and firmly-established state procedural rule requiring a timely objection to preserve issues for appeal. For the same reasons set forth above in addressing Petitioner's claims regarding the unredacted videotapes, this claim is procedurally defaulted in this court, precluding habeas review.

### D. Prosecutorial Misconduct

Petitioner next alleges that three comments by the prosecutor during opening statement were inflammatory and argumentative, violating his right to a fair trial. The first words of the Prosecutor's opening statement were: "[ADM] will forever be two years old and her last memory will forever be that of the Defendant violently shaking the life out of her." (Trans. Day One, p. 19.). The prosecutor also stated that the "Coffeyville Police Department uncovered the evidence that will compel you to convict the defendant in this case." *Id.*, p. 21. Lastly, the prosecutor closed his opening statement by saying: "Once you've heard all this testimony, you'll be compelled to give the Defendant his last memory of these proceedings. You'll find him guilty of murder in the first degree and child abuse." *Id.*, p. 23. Petitioner also asserts that the prosecutor's comments bolstered the testimony of the police department but prevented the jury from questioning the improper tactics the

police used to get the admissions that Petitioner had shaken the victim on dates prior to the 911 call.

### 1. State Court Holding

The Kansas Supreme Court noted that no objection to these statements was made, but held that "a defendant need not object to alleged prosecutorial misconduct in order to preserve the issue for appeal." *Alger*, 282 Kan. at 304-05, citing *State v. Dixon,* 279 Kan. 563, 581 (2005). *But see State v. Davis*, 275 Kan. 107, 122 (2003) (finding claim of prosecutorial error normally requires contemporaneous objection, but the "court's review of the issue is the same whether or not an objection was made at trial if the claimed error implicated a defendant's right to a fair trial and denied the defendant his or her Fourteenth Amendment right to due process.")

The Kansas Supreme Court examined the merits of this claim by asking: 1) whether the complained-of conduct was outside the considerable latitude given a prosecutor in discussing the evidence; and 2) if so, whether the remarks constituted plain error, prejudicing the defendant and denying him a fair trial. *Alger*, 282 Kan. at. 305, citing *Dixon,* 279 Kan. at 590–91.

The Kansas Supreme Court found that the prosecutor's comments were within the latitude allowed in opening argument and were rationally related to the evidence presented, stating:

> Although it may be true that the prosecutor in this case danced on the line between mere recitation of the expected evidence and forbidden argument, he did not step over it. The "last memory" rhetorical device was colorful, but it was not error. The State's expert evidence

supported its theory that Alexis lost consciousness immediately after her fatal injury and never regained it; thus, to the extent a 2–year–old could have developed a memory in the way that an adult conceives of the term, her last memory would have been of that injury, allegedly inflicted by defendant. In addition, the determination of defendant's guilt or innocence of the charged crimes was the ultimate question the jury was called upon to address. It is the prosecutor's role to seek a conviction. The prosecutor merely stated the obvious when he asserted that the evidence would compel a guilty verdict.

*Alger*, 282 Kan. at 306. Finding no error, the Court did not reach the plain

error issue.

## 2. Habeas Review

Clearly established federal law is that a prosecutor's argument violates

the Constitution in these circumstances[2] only if it constitutes a denial of due

process.

> The "clearly established Federal law" relevant here is [the United States Supreme Court] decision in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.,* at 181, 106 S.Ct. 2464 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S .Ct. 1868, 40 L.Ed.2d 431 (1974)).

*Parker v. Matthews,* ___ U.S. ___. 132 S.Ct. 2148, 2153 (2012). This

determination is made after "tak[ing] notice of all the surrounding

circumstances, including the strength of the state's case." *Coleman v.*

*Brown,* 802 F.2d 1227, 1237 (10th Cir. 1986).

---

[2] If, however, the challenged statements effectively deprived the defendant of a specific constitutional right, a habeas claim may be established by showing only that the violation may not be "deemed harmless beyond a reasonable doubt." *Gipson v. Jordan,* 376 F.3d 1193 (10th Cir. 2004), quoting *Mahorney v. Wallman,* 917 F.2d 469, 472, 474 (10th Cir. 1990) (quotation omitted).

"[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury ... will [necessarily] draw that meaning." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974). Nor is it "enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quotation omitted). Thus, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Tillman v. Cook,* 215 F.3d 1116, 1129 (10th Cir. 2000). *See* e.g., *Darden* 477 U.S., at 180, n. 11-12 (finding that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief although the prosecutor referred to the defendant as an "animal" and said he "wish[ed] [he] could see [the defendant] with no face, blown away by a shotgun."); *Banks v. Workman,* 692 F.3d 1133 (10th Cir. 2012) (finding no violation of defendant's constitutional rights or habeas relief warranted, even though the prosecutor called the defendant a "wild animal that stalks its prey," "a predator who lurks in the shadows," a "monster" who selects the most helpless victims, and a "Mafia style killer.").

The fundamental-fairness standard for allegedly improper prosecution statements constitutes "a high hurdle" for the Petitioner to overcome. *Banks* 692 F.3d at 1148.

> In determining whether a trial is rendered "fundamentally unfair" in light of the conduct of a prosecutor, we examine the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial ... as well as any cautionary steps—

> such as instructions to the jury—offered by the court to counteract improper remarks."

*Littlejohn v. Trammell,* 704 F.3d 817 (10th Cir. 2013), quoting *Wilson,* 536 F.3d at 1117 (quoting *Bland v. Sirmons,* 459 F.3d 999, 1024 (10th Cir. 2006)).

Here, the Kansas Supreme Court applied a test consistent with clearly established federal law and found the comments to be within the latitude given to attorneys. By so doing, it necessarily found that the comments did not infect the trial with unfairness so as to make Petitioner's conviction a denial of due process. This Court agrees that the comments challenged by the Petitioner did not violate Petitioner's constitutional rights. The Court instructed the jury immediately before the Prosecutor's opening statement that "[n]either the opening or the closing statements are evidence. It is what you hear in between that's important." *Id.,* p. 14. It cautioned the jury to "consider only the testimony and exhibits entered into evidence and accepted by the Court," *id.,* p.15, and again reminded them, "[r]emember, once again, nothing said in either of the attorney's opening or closing is evidence that you are to consider." *Id.*, p. 17. The court's closing instructions again cautioned the jury that its decision must be based only on the evidence, that statements of counsel are not evidence, and that any statements unsupported by the evidence should be disregarded. Trans, Day three, p.116.

The prosecutor devoted the bulk of his challenged opening statement to laying out the evidence of Petitioner's guilt he expected the jury to hear. If the Prosecutor "danced on the line between mere recitation of the expected evidence and forbidden argument," it was a slow waltz and not a Charleston. In other words, it's difficult to see how the prosecutor's challenged statements could have inflamed the jury's passions above and beyond their natural reaction to the crime itself. The Kansas Supreme Court reasonably determined that the prosecutor's comments were not improper, and the comments did not so taint the trial as to render it fundamentally unfair. No basis for habeas relief has been shown.

### E. Cumulative Error

Petitioner contends that the cumulative effect of trial errors deprived him of his right to a fair trial.

### 1. State Court Holding

Petitioner raised this issue before the Kansas Supreme Court which found no error, so declined to examine the totality of the circumstances:

> Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. *State v. Plaskett,* 271 Kan. 995, 1022, 27 P.3d 890 (2001). Seeing no error in defendant's trial, we cannot apply the cumulative error rule here.

*Alger*, 282 Kan. at 306.

### 2. Habeas Review

> In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.

*Lott v. Trammell,* 705 F.3d 1167, 1223 (10th Cir. 2013) (internal quotation marks and citation omitted), *petition for cert. filed,* (Jun. 12, 2013). This analysis is triggered "only if there are at least two errors." *Id.* "The cumulative effect of the errors will be deemed harmful if they so infected the trial with unfairness as to make the resulting conviction a denial of due process, or rendered the sentencing fundamentally unfair … " *Lockett v. Trammel,* 711 F.3d 1218, 1245 (10th Cir. 2013) (internal quotation marks and citation omitted).

Here, no constitutional errors have been shown, so Petitioner is not entitled to relief on this claim.

### F. Sufficiency of the Evidence

Petitioner contends that the evidence presented at trial was insufficient to sustain a conviction of first degree murder.

Petitioner raised this issue in his K.S.A. 60-1507 petition, but did not raise it in his appeal from the denial of that petition, and thus waived further consideration of it in the state courts. *State v. Edwards*, 260 Kan. 95, 98 (Kan. 1996). Petitioner's failure to present this claim to the state appellate courts results in its procedural default for federal habeas purposes. *O'Sullivan*, 526 U.S. at 844-848. Petitioner has shown neither cause and

prejudice nor a miscarriage of justice, as is necessary to avoid procedural default. Thus, this claim is procedurally barred from habeas review.

## III. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). The Court finds that Petitioner has not met this standard as to any issue presented in this case, so denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 13th day of December, 2013, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge